Filed 11/4/22  In re Charles G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Charles G., Person Coming Under the Juvenile Court Law. | B318363 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.M. et al.,<br><br>    Defendants and Appellants. | (Los Angeles County Super. Ct. No. 20CCJP03534A) |

        APPEALS from orders of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore.  Affirmed.
        Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant M.M.
        Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant C.G.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————————

The juvenile court terminated the parental rights of appellants C.G. (Father) and M.M. (Mother). (Welf. & Inst. Code, § 366.26.)[1] Appellants challenge the adequacy of an inquiry into Father's ancestry under the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) We conclude that notices sent to four tribes and two agencies were sufficient. Additional inquiry would not help: Father admittedly lacks tribal membership, which is a prerequisite to a finding that his child is Indian. We affirm.

## FACTS AND PROCEDURAL HISTORY

When Mother gave birth to Charles G. in 2020, hospital staff found drug paraphernalia on her person. She admitted taking heroin in the hospital bathroom and tested positive for opiates, methamphetamine, and amphetamine. Mother has used heroin for 10 years and took it throughout her pregnancy. Father confirmed Mother's disclosure that he also uses drugs; he began using heroin as a teenager. Newborn Charles tested positive for opiates and began treatment for drug withdrawal symptoms.

Respondent County of Los Angeles Department of Children and Family Services (DCFS) detained Charles. In the detention report, Mother denied Indian heritage but said that Father has Cherokee ancestry. Father indicated that he is half Cherokee, in the Red Paint Clan, and is seeking tribal membership.

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

A dependency petition, filed July 1, 2020, alleged that appellants' drug abuse endangers Charles's health and safety, and places him at risk of harm. An Indian Child Inquiry (ICWA-010) form attached to the petition states that Charles may be a member of the Cherokee Red Paint Clan.

Father submitted a Parental Notification of Indian Status (ICWA-020) form stating that he and Charles are or may be tribe members, and one or more of his relatives is or was a member of "Cherokee Nation (Red Paint Clan)." Father specified, "My father, paternal grandmother, and my great grandfather were members." At the detention hearing, the court found reason to believe Charles is Indian, noting Father's claim of Cherokee heritage. It ordered DCFS to investigate and notify the appropriate tribes. The court found no reason to know Mother has Indian heritage: She denied it in her ICWA-020 form and her counsel denied it at the hearing. The court deemed Father to be a presumed parent. It found that Charles is in imminent physical danger and placed him in the temporary custody of DCFS.

In the jurisdiction report, DCFS showed that on August 14, 2020, it sent ICWA-030 notices to the Cherokee Nation; Eastern Band of Cherokee Indians; The Chickasaw Nation; United Keetoowah Band of Cherokee Indians in Oklahoma; the Secretary of the Interior; and the Bureau of Indian Affairs.[2] The notices gave information about appellants and their biological parents, grandparents and great grandparents. The social worker's declaration attached to the ICWA-030 notices avers that

---

[2] Mother acknowledges there are "only three federally-recognized Cherokee tribes": Cherokee Nation, Eastern Band of Cherokee Indians, and the United Keetoowah Band.

3

Father claims "Red Paint Clan, Cherokee Nation ancestry. He stated he is ½ Cherokee. He is in the process of establishing himself as a tribal member of the Cherokee Nation."

Charles was placed with his maternal aunt (Aunt). He is at risk of developmental delays due to drug exposure and premature birth. Mother admitted using heroin while pregnant, saying she tried to "detox" by taking it morning or evening "as needed." She did not try to detox by seeking medical care. She did not have prenatal care but went to the emergency room several times; she knew she had a high-risk pregnancy. She used heroin the week she gave birth to Charles.

Mother visited Charles twice and knows he is on drug withdrawal medication. Appellants use heroin together. They are homeless and failed to appear for drug tests. Shortly before the jurisdiction hearing, Mother tested positive for methamphetamine, opiates, and morphine. Father knew Mother used heroin while pregnant. He said he "uses heroin and methamphetamine for self-medication" and has not started a rehabilitation program. He had not met Charles in person by the end of August 2020 but occasionally sees him on FaceTime.

Father was a dependent of the court from 1990–2007. He was born addicted to heroin and grew up in foster care. His biological mother died several years ago. Charles's paternal grandfather (PGF) was incarcerated throughout Father's childhood; Father met PGF only once in Father's lifetime, in 2016. They have not been in touch since then.

Aunt is aware that appellants use drugs and were homeless during Mother's pregnancy; they were constantly evicted from shelters and motels. The maternal grandmother said Mother began using methamphetamine in high school, attended a

4

rehabilitation program at age 18, and has regularly used drugs for 10 years. Mother thought using less heroin while pregnant would diminish its impact on the baby. Mother did not have prenatal care, saw Charles only twice after giving birth, and is now "off the radar" and difficult to locate.

The court sustained the petition on August 27, 2020. It delayed disposition while awaiting ICWA responses. DCFS received a September 2, 2020 letter from the Eastern Band of Cherokee Indians, stating that Charles is neither registered nor eligible to register as a member. A letter dated September 9, 2020, from the Chickasaw Nation Child Welfare Services, says no Indian ancestors were found in their records and Charles is not a Chickasaw "Indian Child" under ICWA. The record does not contain replies from other tribes and government entities that were sent ICWA-030 notices.

On October 13, 2020, at the disposition hearing, the court removed Charles from parental custody and found he is not an Indian child. Appellants participated in the hearing and did not object. They were ordered to complete a six-month drug program, random drug testing, a parenting program, individual counseling, and monitored visits with Charles.

Six months later, DCFS reported that appellants did not enroll in any programs or visit Charles and are homeless. Charles is bonding with Aunt and other maternal relatives. Appellants visited him once and have no bond with him.

In June 2021, appellants falsely claimed to be enrolled in a drug program. When a social worker called to confirm their participation, she was told that Mother never enrolled and Father left the program, without finishing it, a year earlier. Aunt reported that when appellants came for a visit, Mother was

5

visibly pregnant and told Aunt she planned to leave California to prevent DCFS from detaining the baby. Appellants failed to show up at subsequent scheduled visits with Charles. The court ended appellants' reunification services on July 14, 2021, and scheduled a permanent plan hearing.

Before the permanent plan hearing, DCFS reported that Aunt intends to adopt Charles, who has lived with her since birth and is bonded to her. She is loving, protective, and tends to all his needs. Appellants visited Charles a total of four times since his detention. DCFS asked the court to terminate parental rights.

Mother gave birth to H.G., who was detained when he and Mother tested positive for opiates. On January 6, 2022, the court found Charles is adoptable and has no bond with appellants. Over appellants' objections, the court terminated parental rights and freed Charles for adoption.

## DISCUSSION

We review ICWA findings to see if they are supported by substantial evidence. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) ICWA establishes standards to follow when an Indian child is removed from parental custody. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881–882.) An "Indian child" is defined as "either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1010 [ICWA " 'is limited to children who are either enrolled in a Tribe or are eligible for enrollment and have a parent who is an enrolled member' "].)

6

From initial contact with a family, DCFS and the court have "an affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) This means "asking the child, parents, legal guardian, Indian custodian, extended family members, and others who have an interest in the child . . . whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) At initial appearances, the court must ask if a participant knows whether the child is Indian. (*Id.*, subd. (c).) Additional inquiry and notice to tribes is required if there is "reason to believe" or "reason to know" that the child is Indian. (*Id.*, subds. (d), (e) & (f).)

From its initial contact with appellants, DCFS inquired into their Indian ancestry. It told the court that Charles may have Indian ancestry in the ICWA-010 form attached to the petition and the ICWA-020 forms submitted at the detention hearing. The court found reason to know that Charles may be Indian and ordered that notice be given to appropriate tribes.

DCFS sent ICWA-030 notices by certified mail to four tribes and two agencies. They listed the names, birth dates, and birth places of Father, PGF, the paternal grandmother, the paternal great grandfather and great grandmother, along with the same information for Mother and her relatives. Paternal relatives are listed as Cherokee or Chickasaw tribe members. The social worker specifically cited Father's "Red Paint Clan Cherokee Nation ancestry" in the notices.

At the outset of the dependency proceeding, Father said he was seeking membership in the Cherokee tribe. The social worker advised the tribes of his intentions in her ICWA-030 declaration. Father did not inform the juvenile court, nor does he assert on appeal, that his tribal membership was confirmed. In

7

his brief, Father says several times "he may be eligible for membership" through paternal relatives.

Father's acknowledgement that he is *not* a tribe member, only seeking membership, is substantial evidence that Charles is not an "Indian child" because he is not the child "of a member of an Indian tribe." (25 U.S.C. § 1903(4)(b).) "[A]n Indian child is one with a tribal affiliation, not merely Indian ancestry." (*In re Ezequiel G., supra,* 81 Cal.App.5th at p. 1009.) "Because tribal membership typically requires an affirmative act by the enrollee or her parent, a child's parents will, in many cases, be a reliable source for determining whether the child or parent may be a tribal member. We therefore believe a juvenile court may find an ICWA inquiry was adequate even if an agency has not interviewed some available family members." (*Id.* at p. 1010.)

Appellants complain that DCFS failed to interview PGF; however, no one had PGF's contact information. In researching the ICWA-030 notices, the social worker learned PGF's current and former addresses are "unknown." Father saw PGF once, in 2016. Father's statement that he "has" PGF on Facebook is ambiguous. Father did not state that he communicates with PGF on Facebook or in any other manner. There is no mention in the record that Father has any contact with his twin brother, or that the brother knows about tribal enrollment.

Appellants make no proffer on appeal that there is reason to believe that PGF or Father's twin brother could supply information that Charles may be an "Indian child." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 786 (*Dezi*), review granted Sept. 21, 2022, S275578.) Absent such a proffer, we do not automatically remand the case for further inquiry. (*Ibid.*)

8

ICWA is based on membership in "an Indian tribe." (§ 224, subd. (a)(1).) A tribe "sets its own membership criteria and is the keeper of membership records, and thus its determination 'that a child is or is not a member of, or eligible for membership in, that tribe' " is " 'conclusive.' " (*In re Ezequiel G., supra,* 81 Cal.App.5th at p. 1010, quoting § 224.2, subd. (h).) DCFS need not contact a clan when the tribe keeps the records and makes membership determinations.

Notice was given to four tribes, including the Cherokee Nation, with names and birth information for Father's family and his claim of ancestry in the Red Paint Clan. No tribe responded that Charles is a tribe member. Appellants make no proffer that Father took necessary steps and has now established his tribal membership, to show that Charles is eligible for membership. (25 U.S.C. § 1903(4)(b).) Appellants have not shown a prejudicially deficient ICWA inquiry affecting the outcome or a miscarriage of justice. (Cal. Const., art. VI, § 13.)

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



HOFFSTADT, J.



BENKE, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.